UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**ORIGINAL**

SEDONA CORPORATION,

        Plaintiff,

- v -

No. 03 Civ. 3120 (LTS)(THK)

LADENBURG THALMANN & CO., INC., et al.,

        Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/19/06

LAURA TAYLOR SWAIN, United States District Judge

MEMORANDUM OPINION AND ORDER

Defendants Amro International, S.A. ("Amro"), Roseworth Group Limited ("Roseworth"), Cambois Finance Inc. ("Cambois"), Rhino Advisors, Inc. ("Rhino"), Thomas Badian ("Badian"), UltraFinanz AG ("UltraFinanz"), and H.U. Bachofen ("Bachofen")[1] (collectively, the "Amro Settlement Defendants"); Ladenburg Thalmann & Co., Inc. ("Ladenburg"); Dr. Batliner and Partner, Hans Gassner ("Gassner"), and Dr. Herbert Batliner ("Dr. Batliner") (collectively, the "Batliner Defendants"); Markham Holdings Limited ("Markham"); Pershing, LLC ("Pershing"); Westminster Securities Corporation ("Westminster"); Wm. V. Frankel & Co., Inc. ("Frankel"); David Boris ("Boris"); Joseph A. Smith ("Smith"); Thomas Tohn ("Tohn"); and Michael Vasinkevich ("Vasinkevich"), move this Court pursuant to Local Civil Rule 6.3 for reconsideration of the Court's August 8, 2005, decision (the "Order") granting in part and denying in part their respective motions to dismiss Plaintiff Sedona Corporation's ("Plaintiff" or "Sedona") First Amended Complaint ("Complaint"). See Sedona Corp. v. Ladenburg Thalmann & Co., Inc., No. 03 Civ. 3120(LTS), 2005

---

[1] The Court has been informed that Bachofen died on December 5, 2005. (See "Suggestion of Death," Docket Entry No. 250.)

SEDONA.RECONSID     VERSION 7/18/06                                  1

Copies mailed _and given to counsel of record_
Chambers of Judge Swain 7-18-06

WL 1902780 (S.D.N.Y. Aug. 9, 2005). Defendants Vasinkevich, Tohn and Pershing further move, pursuant to Federal Rule of Civil Procedure 60(b)(1), to correct perceived mistakes. Plaintiff, by letter dated May 31, 2006, seeks permission to amend its allegations with respect to Defendant Pershing.

Familiarity with the Court's Order is presumed. The Court has considered thoroughly the parties' submissions in connection with the instant motions, and will address the merits of each motion in turn. Capitalized terms have the meanings set forth in the Order unless indicated otherwise here.

## DISCUSSION

### Federal Rule of Civil Procedure 60(b)(1) Motions

Federal Rule of Civil Procedure 60(b)(1) provides that, in the event of "mistake, inadvertence, surprise, or excusable neglect," the Court may, upon a motion, "relieve a party . . . from a final judgment [or] order." Fed. R. Civ. P. 60(b)(1). Pursuant to the Rule, a Court may "relieve a party from the effects of a judgment based on the court's own mistake of fact," as well as a mistake of law. In re: 310 Assocs., 346 F.3d 31, 32, 35 (2d Cir. 2003).

*Pershing*

The "Conclusion" section of the Order incorrectly listed Pershing's motion to dismiss Sedona's Second claim for relief as "denied." (Order, 50.) As a result, Pershing's motion to dismiss the civil conspiracy claim against it was also "denied." (See id.) As the Court noted in the Order, the Complaint is devoid of allegations of scienter as to Defendant Pershing; the Court therefore intended to dismiss all fraud-based claims for relief as against Pershing. Accordingly, the Order is hereby amended to the extent that Pershing's motion to dismiss the Complaint is granted, without prejudice,

in its entirety. Pershing's motion for reconsideration is denied as moot. Sedona's letter request, dated May 31, 2006, to amend its allegations against Pershing is granted.

*Boris*

To the extent Defendants Ladenburg and Boris' motion for reconsideration includes a motion on behalf of Boris to correct a mistake, such motion is granted. The Court neglected to include Boris in a list of Defendant representatives as to whom Sedona failed to adequately allege a strong inference of scienter in connection with its market manipulation claim. (See Order, 29.) Accordingly, Boris' motion to dismiss Sedona's Second claim for relief is granted. The sole remaining claim against Boris is for control person liability for Defendant Ladenburg's alleged fraudulent activity.

*Vasinkevich & Tohn*

Defendants Vasinkevich and Tohn's motion to correct a mistake is denied. Vasinkevich and Tohn argue that, in light of the Court's conclusion as to Sedona's claim for market manipulation against them, the failure to dismiss the First, Fifth and Sixth claims for relief must have been a mistake. However, as explained on pages 25-27 of the Order, the Complaint specifically alleges that both Vasinkevich and Tohn knowingly made false statements. Those allegations of misrepresentations and/or omissions are sufficient to support the scienter elements of the First and Fifth claims for relief, and provide an underlying substantive basis for the Sixth claim for conspiracy. Accordingly, the motion to dismiss those claims as against Vasinkevich and Tohn was properly denied.

Motions for Reconsideration

Motions for reconsideration "are committed to the sound discretion of the district

court." Jordan v. Metro. Life Ins. Co., No. 03 Civ. 4110(SAS), 2004 WL 1752822, at *2 (S.D.N.Y. Aug. 4, 2004). Reconsideration "is 'an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources.'" Montanile v. Nat'l Broad. Co., 216 F. Supp. 2d 341, 342 (S.D.N.Y. 2002) (quoting In re Health Mgmt. Sys. Inc. Secs. Litig., 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000)). Thus, the standard "must be narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the Court." Hoffenberg v. Hoffman & Pollok, 296 F. Supp. 2d 504, 505 (S.D.N.Y. 2003) (internal quotation marks omitted).

In the Southern District of New York, motions for reconsideration are governed by Local Civil Rule 6.3. Pursuant to Local Civil Rule 6.3, the party moving for reconsideration "must demonstrate controlling law or factual matters put before the court on the underlying motion that the movant believes the court overlooked and that might reasonably be expected to alter the court's decision." Montanile, 216 F. Supp. 2d at 342. "Alternatively, the [c]ourt may grant the motion to correct a clear error or prevent manifest injustice." Global View Ltd. Venture Capital v. Great Cent. Basin Exploration, L.L.C., 288 F. Supp. 2d 482, 483 (S.D.N.Y. 2003) (internal citations and quotation marks omitted).

*Vasinkevich, Tohn & Smith*[2]

The Court denies the Vasinkevich Defendants' motion to reconsider the Court's denial of their motions to dismiss Sedona's Twelfth claim for relief (relating to control person liability under § 20(a) of the Exchange Act). The Vasinkevich Defendants assert that the Court overlooked case law within this Circuit finding that the "culpable participation" element of a control person liability claim is well pled only if a plaintiff has alleged scienter with particularity. (Vasinkevich Defs.' Mem. of

---

[2] Hereinafter, the "Vasinkevich Defendants."

Law in Supp. of Mot. for Reconsideration under Local Civil Rule 6.3 ("Vasinkevich Defs.' Mem."), 5-6.) However, "[t]he issue whether a plaintiff must plead culpable participation to state a claim under Section 20(a) is one on which courts are divided." In re Bisys Sec. Litig., No. 04 Civ. 3840(LAK), 2005 WL 3078482 (S.D.N.Y. Nov. 16, 2005). While there is case law requiring a heightened standard of pleading for culpable participation,[3] there is also longstanding support for the position this Court took in the Order, that Sedona pled adequately control person liability as against the Vasinkevich Defendants, regardless of whether scienter was alleged. See, e.g., In re Parmalat Sec. Litig., 375 F. Supp. 2d 278, 310 (S.D.N.Y. 2005); Neubauer v. Eva-Health USA, Inc., 158 F.R.D. 281, 284-85 (S.D.N.Y. 1994).

Further, the Defendants' assertion that, in Suez Equity Investors, L.P. v. The Toronto-Dominion Bank, 250 F.3d 87 (2d Cir. 2001), "the Second Circuit . . . held that control person allegations must be pled with particularity" is completely unfounded. (Vasinkevich Defs.' Mem., 6.) While the Suez Court referred to culpable participation in the context of describing control person liability, the Court did not discuss how the cause of action is to be pled. See Suez, 250 F.3d at 101-102. Indeed, the Suez Court found the following sufficient to make out a prima facie claim for control person liability of a defendant bank under Section 20(a): "The complaint alleges that DeRoziere [(the individual alleged to have disseminated false research information in connection with a transaction)] was an officer of the Bank and that he had primary responsibility for the dealings of that Bank and the other corporate defendants with SAM Group [(the investor that was given the false information)]." Id. at 101 (citation omitted).

Here, Sedona's Complaint includes allegations that the Vasinkevich Defendants "acted

---

[3] See, e.g., In re Yukos Oil Co. Sec. Litig., No. 04 Civ. 5243(WHP), 2006 WL 800736, at *24 (S.D.N.Y. Mar. 30, 2006).

as controlling persons of Ladenburg," "exercised control over the corporate operations of Ladenburg through each of their power to direct or cause the direction of the management and policies of Ladenburg," and "had the power and authority to cause Ladenburg to engage in the wrongful conduct complained of herein and did cause Ladenburg to engage in such acts." (Compl. ¶ 164.) Sedona also specifically alleges that Vasinkevich and Smith "held executive officer positions at Ladenburg and, along with Tohn, held signatory power on behalf of Ladenburg." (Id. ¶ 49.) These allegations, taken together with the Complaint's specific allegations of illegal conduct on the part of these Defendants' alleged controlled entity, Ladenburg, are sufficient to plead a control person liability cause of action at this stage of the litigation. Accordingly, the Vasinkevich Defendants' motion for reconsideration is denied.

*Ladenburg & Boris*

Defendants Ladenburg and Boris[4] request that the Court reconsider its findings in the Order in connection with Sedona's allegations against them. For the following reasons, the motion is denied.

Despite Ladenburg's arguments to the contrary, the Court did not overlook Supreme Court precedent in Central Bank which held that "a private plaintiff may not maintain an aiding and abetting suit under § 10(b)" of the Exchange Act. Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A., 511 U.S. 164, 191 (1994). Here, Sedona does not allege that Ladenburg was a mere aider and abetter, but rather, that it was a direct "participant" in and a "co-creator" of the alleged fraud. (Compl. ¶ 68.) For example, Sedona alleges that:

- "Ladenburg set up Sedona using a 'bait and switch' technique." (Id. ¶ 39.) Sedona alleges

---

[4] Boris joined Ladenburg in this motion for reconsideration. However, in light of the Court's granting of Boris' motion to dismiss the market manipulation claim against him, the Court limits the fraud discussion in this section to Ladenburg.

that "this activity has been repeated numerous times by Ladenburg and Rhino." (Id. ¶ 42.)

- "Ladenburg . . . omitted to tell Sedona: a) [it] had prior significant relationships with Rhino and other defendants herein; b) most if not all of the companies in which Rhino and Ladenburg (including other investors and clients of Ladenburg and Rhino) had invested or placed investments have suffered from price declines and illegal naked short selling; [and] c) Rhino and other clients of Ladenburg, inclusive of Ladenburg, were known shorters of stock and manipulators of stock." (Id. ¶ 52.)

- "The initial investment coupled with [Ladenburg's] misrepresentation regarding the commitment to obtain the additional $50 Million of financing was used as a trick to also mislead the market, thereby spiking the share price up and allowing the manipulators and participants in the conspiracy to defraud Sedona by illegally manipulating and shorting the stock of Sedona down from a higher stock price, knowing that the same group of defendants herein . . . never intended to fund any material part of this $50 Million." (Id. ¶ 64.)

In connection with the issue of scienter, Sedona has alleged opportunity on the part of Ladenburg to participate in the alleged scheme. However, Sedona's proffered allegations of Ladenburg's motive, that is, motive arising from "the structure of the financing agreement" (id. ¶ 111), are insufficient to support scienter, to the extent that Sedona has not alleged that Ladenburg would substantially profit from such an agreement. Nonetheless, the Court's prior determination that Sedona's Complaint contains otherwise adequate allegations of scienter as to Ladenburg stands.

Factual allegations of motive and opportunity are not the only means by which a securities fraud plaintiff may plead scienter. Allegations of "facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness" are also sufficient. Rombach v. Chang, 355 F.3d 164, 176 (2d Cir. 2004) (quoting Rothman v. Gregor, 220 F.3d 81, 90 (2d Cir. 2000)). Here, Sedona

has alleged strong circumstantial evidence of Ladenburg's conscious misbehavior and/or recklessness with regard to its alleged fraudulent activity and Ladenburg's connection with the alleged fraudulent activities of the investors it procured for Sedona. For example, Sedona's allegations that Ladenburg played a central role in the alleged scheme to defraud Sedona by 1) obtaining investors for Sedona that Ladenburg knew would likely manipulate Sedona's stock; 2) creating a "bait and switch" scenario through which Sedona would ultimately be forced to procure its financing solely through Ladenburg's investors; 3) concealing from Sedona that it had significant prior working relationships with entities such as Amro and Markham, and that together they had participated in similar schemes in the past; and 4) misrepresented its investment capabilities as a trick to mislead the market; support a strong inference that Ladenburg either intended to defraud Sedona, had knowledge of the alleged fraud, or recklessly disregarded the truth in connection with that fraud. See Caputo v. Pfizer, Inc., 267 F.3d 181, 191 (2d Cir. 2001) (quotation omitted).

Accordingly, the Court continues to find sufficient allegations of scienter against Ladenburg and denies its motion for reconsideration, to the extent Ladenburg requests reconsideration of the Court's conclusions as to Sedona's Second and Sixth claims for relief.

In connection with the breach of contract aspect of the motion for reconsideration, the Court dismissed the claim as insufficiently pled and will grant the motion for reconsideration only to the extent that it relates to Boris. Boris is correct in asserting that the Complaint does not allege that Boris intended to bind himself by the terms of the contract or personally failed to perform the contract. Under New York law, Boris may not be held personally liable for a contract he signed only in his capacity as an executive officer of Ladenburg. See, e.g., Huntington Int'l Corp. v. Fieldcrest Cannon, Inc., 1994 WL 282220, at *2 (S.D.N.Y. June 22, 1994) ("The Second Circuit has held that, '[a] director is not personally liable for his corporation's contractual breaches unless he assume[s]

personal liability.'" (quoting Mills v. Polar Molecular Corp., 12 F.3d 1170, 1177 (2d Cir. 1993) (alterations in original))); Maranga v. McDonald & T. Corp., 777 N.Y.S.2d 732, 733 (2d Dep't 2004) ("Where a principal of a corporation expressly signs a contract in his or her capacity as an officer of the corporation, unless he or she purports to personally bind him or herself, he or she will not be held personally liable under the contract."). Accordingly, Boris' motion to dismiss the breach of contract claim is granted, with prejudice.

Sedona has alleged sufficiently control person liability against Boris, the Executive Vice President of Ladenburg, for the reasons stated in the Section of this Order discussing control person liability of Vasinkevich, Tohn, and Smith. Accordingly, the motion for reconsideration is denied, to the extent it relates to Sedona's Twelfth claim for relief as against Boris.

*Markham & Hassan*

Defendants Markham and Hassan's motion for reconsideration fails to identify any factual or legal matters that the Court may have overlooked in reaching the determinations detailed in the Order. The only controlling authority cited in their motion papers, Schreiber v. Burlington N., Inc., 472 U.S. 1 (1985), relates to Plaintiff's Section 10(b) and Rule 10b-5 market manipulation claim. After a thorough analysis of the legislative history and intent underlying § 14(e) of the Securities Exchange Act, 15 U.S.C. § 78n(e), the Schreiber Court held that "the term 'manipulative' as used in § 14(e) requires misrepresentation or nondisclosure." 472 U.S. at 12. While that limited holding imposed no such requirement on market manipulation claims brought under § 10(b) and Rule 10b-5, the Schreiber Court noted that the Court has "interpreted 'manipulative' in [the context of § 10(b)] to require misrepresentation." Id. at 8 (citing Santa Fe Indus., Inc. v. Green, 430 U.S. 462, 476-77 (1977); Piper v. Chris-Craft Indus., Inc., 430 U.S. 1, 43 (1977); Ernst & Ernst v. Hochfelder, 425 U.S. 185, 199 (1976)).

Here, although Sedona has not alleged adequately misrepresentation against Markham, its Section 10(b) and Rule 10b-5 market manipulation claim is nonetheless supported by the allegations of deception contained in the Complaint. See, e.g., Santa Fe Indus., 430 U.S. at 471 ("Section 10(b) . . . makes it 'unlawful . . . to use or employ . . . any manipulative or deceptive device . . .'; Rule 10b–5 . . . prohibits, in addition to nondisclosure and misrepresentation, any 'artifice to defraud' or any act 'which operates or would operate as a fraud or deceit.'") (citations omitted). The Complaint alleges that Markham is an "active practitioner[] of stock manipulation and stock fraud," and suggests a history of deceptive practices by listing six separate companies having "significantly declining stock prices after receiving investments and/or financing" from Markham, in a manner similar to the alleged experience of Sedona. (Compl. ¶¶ 33, 43.) Sedona further alleges that Markham was a part of the conspiracy to defraud Sedona as a preferred Series G holder that later submitted conversion notices, which Sedona paid "in the hope that the stock manipulation would stop and this raid on Sedona, intentionally inflicted by the defendants herein in a massive conspiracy . . ., would cease." (Id. ¶ 70.)

With regard to Sedona's claim for control liability against Hassan, the Court refers Hassan to the aforementioned analysis of that claim in connection with the Vasinkevich Defendants' motion for reconsideration. Accordingly, Defendants Markham and Hassan's motion for reconsideration is denied in its entirety.

*Amro Settlement Defendants*[5]

The Amro Settlement Defendants move the Court to reconsider the Order to the extent the Court found that Sedona may be able to void releases contained in a settlement agreement to

---

[5] This group of Defendants also includes the Batliner Defendants, as they are affiliated with Roseworth and Cambois.

which the <u>Amro</u> Settlement Defendants are signatories. The <u>Amro</u> Settlement Defendants' motion for reconsideration presents the Court with no authority, with regard to the issue of repudiation, that the Court did not consider in determining the original motion to dismiss, and does not warrant reconsideration of the Court's holdings in the Order to that extent.

However, to the extent the motion for reconsideration is premised upon the principle that Sedona's acceptance of consideration precludes Sedona from asserting that the releases were invalid, the motion is granted. Under New York law, a party repudiating a release due to fraud must choose one of the following three options: "(1) he may return the consideration paid for the release, thereby rescinding the transaction; (2) he may sue <u>for</u> a reascission [sic] and offer to return the consideration; or (3) he may retain the consideration and sue at law for his damages." <u>Inman v. Merchants Mut. Cas. Co.</u>, 74 N.Y.S.2d 87, 89 (Sup. Ct. 1947) (citations omitted). Here, Sedona argues in its brief that it is pursuing the third option, and is accordingly seeking damages in the instant litigation in connection with alleged fraud and duress relating to the execution of the releases. However, the Complaint on its face fails to assert such a claim for such damages. Accordingly, in light of Sedona's references in its Complaint to the releases, its apparent validation of the releases through its acceptance of consideration and the lack of any assertion of a cognizable cause of action for damages in the Complaint, the Court grants the <u>Amro</u> Settlement Defendants' motion to dismiss, on the basis of the releases, all of the claims asserted against them in the Complaint. (<u>See</u> Order, 14 ("[T]he terms of the Release cover Sedona's current claims.").)

Sedona is hereby granted leave to replead a cause of action for damages arising from the releases and to clarify its claims and efforts, if any, regarding rescission, without prejudice to the <u>Amro</u> Settlement Defendants' right to argue laches. However, such leave is not granted in connection with any such claims against Defendants Bachofen, UltraFinanz, and the Batliner Defendants, over

whom the Court does not have personal jurisdiction (see infra).

*Westminster & Frankel*[6]

Westminster and Frankel request that the Court reconsider its denial of their motions to dismiss Sedona's Second and Sixth causes of action against them. The request is denied. Even if, as Westminster argues, the warrants it received from Roseworth were not adequate to support an inference of motive, that is not the only basis upon which scienter may be alleged. Sedona has provided sufficient allegations of strong circumstantial evidence that Westminster consciously misbehaved or was reckless in connection with the alleged manipulation of Sedona's stock. Sedona alleges that Westminster, "[d]uring the time frame under the SEC Complaint, . . . traded over 1,800,000 Sedona shares as a non-reporting market maker." (Compl. ¶ 98.) Sedona also alleges that Westminster "illegally converted short positions into false long positions, was responsible for stacking bids and/or offers in an effort to manipulate the stock up or down, and likewise was responsible for the manipulation of Sedona's stock herein." (Id. ¶ 99; see also id. ¶ 116.)

Further, to the extent that Westminster's motion papers may be construed as arguing that the Court overlooked controlling law as to broker-dealers defending 10(b) and Rule 10b-5 claims asserted against them, that argument also fails. The only case Westminster cites in this connection is ATSI Commc'ns, Inc. v. The Shaar Fund, Ltd., 357 F. Supp. 2d 712 (S.D.N.Y. 2005). Westminster's reliance on ATSI is misplaced. The ATSI Court made clear that the plaintiff in that case had made only three allegations against the broker-dealer defendant: (1) "it 'was the principal declared market maker in ATSI stock;'" (2) "'any manipulation which took place would have involved [defendant

---

[6] Frankel sent the following missive to the Court: "On behalf of Wm. V. Frankel, we respectfully request that to the extent reconsideration is granted any of the codefendants and the issues for Frankel are the same (particularly with respect to the issues raised by defendant Westminster Securities, another broker dealer), the [C]ourt reconsider its decision with respect to Frankel as well." (See Docket Entry No. 225).

representative], who knew or should have known' about the manipulation;" and (3) "it 'was a cooperating broker-dealer with the defendants,'" ATSI, 357 F. Supp. 2d at 720 (quoting ATSI Compl. ¶¶ 220-22), and that those allegations were "far too conclusory to past [sic] muster under Rule 9(b)." Id. The findings by the ATSI Court, particularly when compared to the allegations against Westminster made by Plaintiffs herein, do not rise to the level of new or contrary controlling law.

Accordingly, Westminster's (and Frankel's) motions for reconsideration are denied.

*The Batliner Defendants & The UltraFinanz Defendants*

The Batliner Defendants, Bachofen and UltraFinanz (collectively, "BBU") note accurately that the Court did not address their argument that the Complaint fails to allege that, as foreign nationals, BBU have sufficient contacts with the United States to support this Court's exercise of jurisdiction over them. The Court declines Sedona's request for permission to brief further this issue and will decide this aspect of the BBU's motion to dismiss on the original, fully briefed, papers. For the following reasons, the BBU's motion to dismiss the Complaint is granted to the extent the motion requests dismissal for lack of personal jurisdiction.

In determining a motion to dismiss for lack of personal jurisdiction, "a court may look to evidence outside the pleadings." Seaweed, Inc. v. DMA Product & Design & Marketing LLC, 219 F. Supp. 2d 551, 554 (S.D.N.Y. 2002) (citing CutCo Indus., Inc., v. Naughton, 806 F.2d 361, 364 (2d Cir. 1986)). Here, because BBU are challenging jurisdiction prior to discovery, Sedona "need make only a prima facie showing by [its] pleadings and affidavits that jurisdiction exists." Teachers' Ret. Sys. of Louisiana v. A.C.L.N., Ltd., No. 01 Civ. 11814(MP), 2003 WL 21058090, at *7 (S.D.N.Y. May 15, 2003). The Court will construe Sedona's proffers in the light most favorable to Sedona, while resolving all doubts in its favor.

"[T]he Securities Exchange Act permits the exercise of personal jurisdiction to the

limit of the Due Process Clause of the Fifth Amendment." SEC v. Unifund SAL, 910 F.2d 1028, 1033 (2d Cir. 1990) (citations omitted). The Court may exercise personal jurisdiction "over a defendant whose 'conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.'" Id. (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)). Here, the relevant "forum state" is the entire United States. See United States v. Dowty Woodville Polymer, Ltd., 976 F. Supp. 207, 210 (S.D.N.Y. 1997) ("Where, as here, there is a federal statute that permits worldwide service of process, the relevant inquiry is whether the defendants have minimum contacts with the United States as a whole." (citations omitted)). The Court may also consider whether the defendant's actions "have 'caused consequences' in the forum state, [t]hough not every causal connection between action abroad and ultimate injury to American investors will suffice." Unifund SAL, 910 F.2d at 1033 (citations omitted). Rather, Sedona must show that BBU knew or should have known that their actions would have a causal effect in the United States, such that they would be amenable to this Court's jurisdiction. See, e.g., Landry v. Price Waterhouse Chartered Accountants, 715 F. Supp. 98, 101 (S.D.N.Y. 1989).

Here, Sedona has not made a prima facie showing that BBU's contacts with the United States are sufficient to support the Court's assertion of jurisdiction over them with respect to Plaintiff's claims. Plaintiff has proffered no basis for the exercise of personal jurisdiction over BBU, other than generalized allegations in the Complaint of conspiracy to defraud Sedona, a United States company, and a series of control relationships documented by various SEC filings. While Sedona does allege a conspiracy between BBU and Defendants over whom the Court has personal jurisdiction, in general "the rule in this circuit is that the mere presence of one conspirator . . . does not confer personal jurisdiction over another alleged conspirator." Leasco Data Processing Equip. Corp. v. Maxwell, 468 F.2d 1326, 1343 (2d Cir. 1972) (citations omitted).

Grant of the motion with respect to Defendants Bachofen, Dr. Batliner, and Gassner, individuals alleged to have participated in the fraud perpetrated against Sedona by virtue of their corporate positions, is additionally appropriate because "[i]f an individual is sued in his individual capacity, but only had contact with [the forum] as an officer of a corporation acting within the scope of his employment, that individual is not subject to personal jurisdiction . . . ." Seaweed, 219 F. Supp. 2d at 554 (citing Kreutter v. McFadden Oil Corp., 71 N.Y.2d 460, 467-68 (N.Y. 1988)). Sedona would have the Court compare favorably the instant action with the situation in SEC v. Unifund SAL, where the Second Circuit held foreign defendants accused of insider trading subject to personal jurisdiction in the United States for involvement in activity having a direct and foreseeable effect on shareholders of a United States corporation. 910 F.2d 1028, 1033 (2d Cir. 1990). However, the Unifund Court cautioned that "[n]ot every securities law violation involving shares of a United States corporation will have the requisite effect within the United States," and went on to distinguish the particularly egregious consequences of insider trading. Here, while Sedona is a United States corporation with American shareholders, unlike the plaintiff in Unifund, Sedona has not alleged sufficiently direct liability for the alleged stock fraud as to BBU. Indeed, the Court determined in the Order that the Complaint stated only one viable claim for relief against BBU - control person liability for the alleged fraudulent conduct of their controlled entities. Even more tenuous, in the context of personal jurisdiction, are the relationships between Gassner and his alleged controlling entities, Dr. Batliner, and Dr. Batliner & Partner; and between Bachofen and his alleged controlling entity, UltraFinanz. Thus, Sedona's allegations that, in their corporate capacities, (1) Gassner signed the Stock Purchase Agreement, in Liechtenstein, under which Roseworth and Cambois bought Sedona's common stock and warrants, and (2) Bachofen signed, in Switzerland, documents on behalf of Amro in connection with Sedona, are wholly insufficient to support in personam

jurisdiction in light of relevant due process standards. It cannot be said that such activity would have caused this group of Defendants to reasonably anticipate being haled into court here.

Accordingly, the Court finds that Sedona has failed to sustain its burden with respect to the exercise of personal jurisdiction over BBU and the action is dismissed for lack of personal jurisdiction as against Defendants Bachofen, UltraFinanz, Gassner, Dr. Batliner and Dr. Batliner & Partner. Plaintiff's request for limited discovery on jurisdictional issues is denied.

Sedona's Request

To the extent Sedona's August 16, 2005, letter to the Court requests further clarification of the Order, the Court clarifies the decision as follows: (1) Defendant Pershing's motion to dismiss is granted in its entirety, without prejudice, and Sedona has leave to replead; (2) the motions to dismiss the Fourth claim for relief under Pennsylvania law are granted as to all Defendants who so moved; and (3) Plaintiff has 30 days from the date of this Memorandum Opinion and Order to amend its Complaint.

CONCLUSION

For the foregoing reasons, this Memorandum Opinion and Order resolves the motions referenced in the docket as numbers 213, 215, 216, 218, and 220, as follows: Defendant Pershing's motion to correct a mistake is granted and Defendants Vasinkevich and Tohn's motion to correct a mistake is denied. Defendants Pershing, the Vasinkevich Defendants, Markham, Hassan and Westminster's motions for reconsideration are denied. Defendants Boris and Ladenburg's motion for reconsideration is granted in part and denied in part. The Amro Settlement Defendants' motions for reconsideration are granted, and the Complaint is accordingly dismissed as against

Defendants Amro, Roseworth, Cambois, Rhino, Badian, Gassner, Dr. Batliner and Partner, Dr. Batliner, UltraFinanz and Bachofen, pursuant to the releases. Plaintiff may replead to seek to assert a cause of action for damages arising from the releases, except as to the following Defendants, against whom the Complaint is dismissed for lack of personal jurisdiction: Defendants Bachofen, UltraFinanz, Gassner, Dr. Batliner and Dr. Batliner & Partner. Any amended complaint must be served and filed within 30 days from the date hereof.

    SO ORDERED.

    Dated: New York, New York
           July 18, 2006

                                        LAURA TAYLOR SWAIN
                                        United States District Judge